UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PREFERRED CONTRACTORS INSURANCE COMPANY,<br><br>                    Plaintiff,<br>     v.<br><br>BAKER AND SON CONSTRUCTION, INC., a Washington for profit corporation; ANGELA COX, as Personal Representative of the ESTATE OF RONNIE E. COX, deceased; ANGELA COX, individually and as mother and guardian of G.C., a minor,<br><br>                    Defendants. | CASE NO. 3:21-cv-05016-RJB<br><br>ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Preferred Contractors Insurance Company's ("Preferred") Motion for Summary Judgment (Dkt. 23) and Defendant Angela Cox's Motion for Certification to the Washington State Supreme Court (Dkt. 41).  Defendant Baker and Son Construction ("Baker") joins in Ms. Cox's motion for certification.  The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This is an insurance coverage action arising out of a contractual relationship between Preferred and Baker in which Preferred provided liability insurance for Baker. Preferred brought this action for a declaratory judgment alleging that it has no duty to defend or indemnify Defendant Baker in an underlying state lawsuit brought by Defendant Cox.

There are two questions at issue in these motions. First, whether the insurance policy ("the Policy") covers Baker for an injury claim made on behalf of the employee of a separate contractor working on a jobsite with Baker. Second, if not, whether policy provisions potentially violate Washington public policy and should be certified for review by the Washington Supreme Court.

For the following reasons, Defendants motion for certification should be granted in part, and Preferred's motion for summary judgment should be denied.

## I.  RELEVANT BACKGROUND

A. FACTS

Preferred sells insurance policies to certain markets or trades, including construction contractors. Dkt. 41 at 4. It issued multiple insurance policies (collectively the "Policies) to Baker. The first Policy at issue was for the period of January 5, 2019 to January 5, 2020, and the second for the period of January 5, 2020 to January 5, 2021. *Id.* Other than the policy periods, the Policy terms were materially identical, but they were separate, standalone policies. *Id.*

On October 31, 2019, Baker, a construction company, was working as a subcontractor under Cox Construction on a remodel project. In an underlying state court lawsuit brough by Ms. Cox in Pacific County Superior Court, Defendant Angela Cox alleges that an employee of Baker "caused a 2x4 to come loose and strike [her husband, Ronnie Cox] in the side of the head," and that he died later that night as a result of that injury.

ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

On November 6, 2019, Baker's officer manager, Brandi Keightley, called and left a voicemail to inform "the insurer" about the incident. Dkt. 30 at 2. In a supplemental declaration, Ms. Keightley clarified that she called the company to whom she paid the premium for Baker's insurance policy. Dkt. 55. The number she called is associated with Professional Premium Acceptance Corporation, which according to its website, is a lender that gives loans to insureds to finance commercial insurance policies. Dkt. 56 at 2.

On September 23, 2021, counsel for Ms. Cox sent a letter to Baker stating that she intended to bring a wrongful death lawsuit. Dkt. 41. Baker forwarded that letter to Preferred through email on September 25, 2021. Dkt. 24-1 at 2. On October 14, 2020, Preferred informed Baker that the Policy did not cover Ms. Cox's claim, but it subsequently agreed to defend Baker in the wrongful death lawsuit under a reservation of rights. Dkt. 41 at 4. On November 12, 2021, Ms. Cox brought the underlying state court lawsuit. Dkt. 1.

**B. THE POLICY**

The following are relevant portions from the materially identical Policies. (Dkts. 24-5 and 24-6). The provisions at issue are the "Action Over" exclusion, the "Notwithstanding" provision, and the 'Claims-Made and Reported Limitation.

The Policy begins by defining the coverage afforded and reads:

> Notwithstanding any other provisions contained in this **Policy**, the coverages set forth are limited to:
>
>     (A) A claim asserted by a third party (i.e. a party who is neither an insured, nor related by ownership or management to the **Member**) where such claim directly substantially relates to an insured's project; and
>     (B) A claim for a **Covered Loss** which is timely and properly reported in accordance with the terms of this **Policy**.

*Id.* at 6.

The next section defines coverage as follows:

**SECTION I – COVERAGES COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend you, the Named Insured, against any "suit" seeking "damages" to which this insurance applies, and which is timely reported to us as provided hereunder. Except as otherwise provided in this policy, we have no duty to defend any other insured. Our duty to defend you is further limited as provided below and in the exclusions made part of this policy. We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply and/or which is not timely reported to us. We may at our discretion investigate any occurrence and settle any claim or suit that may result. But:

…

    b. This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that first takes place or begins during the "policy period". An "occurrence" is deemed to first take place or begin on the date that the conduct, act or omission, process, condition(s) or circumstance(s) alleged to be the cause of the "bodily injury" or "property damage" first began, first existed, was first committed, or was first set in motion, even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harm;
        (2) The "bodily injury" or "property damage" resulting from the "occurrence" first takes place, begins, appears and is first identified during the "policy period". All "bodily injury" or "property damage" shall be deemed to first take place or begin on the date when the "bodily injury" or "property damage" is or is alleged to first become known to any person, in whole or in part, even though the location(s), nature and/or extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, latent, cumulative, changing or evolving;

…

*Id.* at 7–8.

The Policies includes the following exclusion:

**2. Exclusions**

ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

    This insurance does not apply to:

…

    b. **Action Over**
Any "claim" or "suit" arising out of or related to any "bodily injury" or "property damage" sustained by any general contractor(s), subcontractor(s), independent contractor(s), their employees, volunteer workers, temporary workers, day laborers, leased workers, or any persons or companies who are affiliated with such persons or entities, who provide work or products on job sites where the insured provides work, products or services as a contractor or sub-contractor. This exclusion applies whether or not the persons or entities making such claims are hired, or retained by the insured on the site where the claim(s) or suit(s) arise. This exclusion applies whether or not the insured has agreed orally or in writing to defend or indemnify, or to assume the liability, or any person or entity for any such claim(s) or suit(s) under a contract. This exclusion shall apply whether "claim" or "suit" is brought directly against the insured, or the insured is made party to such "claim" or "suit" by impleader, joinder, third-party action, or otherwise.

*Id.* at 8.

Finally, the Policies include the following endorsement:

### **CLAIMS-MADE AND REPORTED LIMITATION**

THIS ENDORSEMENT PROVIDES COVERAGE <u>ONLY ON A CLAIMS-MADE AND REPORTED BASIS</u>. READ THE POLICY AND THIS ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

To the extent that any provision of the policy conflicts or varies from this Endorsement, the terms, conditions, and provisions set forth in this Endorsement shall control, govern, and supersede the conflicting or varying provision(s) of the policy.

This policy does not provide continuous coverage for any insured. A renewal policy may be issued, but each policy will be deemed to stand alone as a single policy, affording no continuous coverage.

The INSURING AGREEMENT of this policy is hereby amended as follows:

    The following Paragraph "d" is added to the Insuring Agreement, **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

d. In addition to the foregoing, this policy shall apply only to claims first made against the Insured and reported to us in writing during the policy period.

> Coverage under this policy will only apply to claims made against the insured and reported to us on or after the policy inception date and prior to the policy expiration date as shown on the Declarations page(s), subject to the extended reporting period provided below.  If prior to the effective date of this policy, any insured had a reasonable basis to believe a claim may arise, then this policy shall not apply to such a claim or related claim
>
> As a condition precedent to any coverage (defense or indemnity) under this Policy, You must give written notice to the Company of any claim as soon as practicable, but in all events no later than:
>     (a) The end of the Policy Period; or
>     (b) 60 days after the end of the Policy Period so long as such "Claim" is made within the last 60 days of such Policy Period.

*Id.* at 47.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").

### B. INSURANCE COVERAGE STANDARD

Washington State substantive law applies.  Under Washington law, "construction of an insurance policy is a question of law[.]" *Kitsap Cnty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 575 (1998).  If a policy is unambiguous, then it must be enforced as written. *Wash. Pub. Util. Dists.*

*Utils. Sys. V. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 10 (1989).  If a policy is ambiguous, meaning susceptible to more than one reasonable interpretation, then the contract must be construed in favor of the insured.  *Id.*  For this reason, "if insurers want exclusions upheld, then they have the burden of drafting them in 'clear' and 'unequivocal' terms." *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.26 274, 288 (2013).

### C.  COMBINED OCCURRENCES AND CLAIMS-MADE LIMITATION

#### 1.  Effect of the Provision

The Policies contain two temporally limiting provisions.  The first, which is in Section I, Coverage A subsection 1.b., limits coverage to "'bodily injury' or 'property damage' [that] is caused by an 'occurrence' that first takes place or begins during the 'policy period'."  Essentially, the Policies only cover injury occurrences that take place during the policy period.

The second provision is an endorsement that modifies Coverage A and states, "[t]his policy shall apply only to claims first made against the Insured and reported to the Company during the policy period."  It continues to require that written notice of a claim must be given either by the end of the Policy Period, or "60 days after the end of the Policy Period so long as such 'Claim" is made within the last 60 days of such Policy Period."

Combined, these two provisions unambiguously require that both an occurrence, meaning the injury causing event, and written notice of a claim stemming from that occurrence be made within the same policy period (or in up to 60 days after the end of the policy period if the claim is made within the last 60 days of the policy period).  Otherwise the Policy does not provide coverage.

The occurrence at issue here, Mr. Cox's injury, occurred in 2019.  Accordingly, it could only be covered by the 2019 Policy because of the occurrences limitation.  The Parties dispute

ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

whether the November 6, 2019 phone call made by Baker's office manager to Professional Premium Acceptance Corporation satisfies the claims-made and reported requirement. *See* Dkt. 52. This phone call does not satisfy the notice requirement for at least one reason: it was not made in writing. However, the issue of certification to the Washington State Supreme Court remains.

    2. <u>Certification to the Washington Supreme Court</u>

Under Washington law, a federal court may certify a question to the Washington State Supreme Court when "it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined[.]" Wash. Rev. Code 2.60.020. In practice, certification should be limited to open questions of state law and issues that are especially complex and present significant policy implications. *See id.*, *Perex-Farias v. Glob. Horizons, Inc.*, 668 F.3d 589, 593 (9th Cir. 2011).

In arguing against certification, Preferred emphasizes that Washington courts have upheld both "occurrences" and "claims made" policies. Dkts. 23 at 8 and 41 at 6; *see e.g.*, *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1182 (E.D. Wash. 2015). These Policies simply merge the two. *Id.* No court in Washington, however, appears to have considered the enforceability of such a combined restriction. There do not appear to be many examples from elsewhere in the United States. At least one court, the New Jersey Supreme Court in *Sparks v. St. Paul Ins. Co.*, found that a similar restriction violated public policy. *See* 100 N.J. 325, 332 (1995).

In *Sparks*, the insured had a "claims made" policy that was similar but slightly less restrictive than the restriction at issue here. *Id.* It only covered claims made within the policy term if the occurrence happened after the policy became effective, but it would cover claims

made within a subsequent policy year for occurrence that happened after the original policy became effective. *Id.* at 328.  In other words, the *Sparks* policy was materially identical to these policies in the first policy year, but it provided more coverage in subsequent years by covering occurrences that happened after the initial policy became effective. *Id.* at 329, 340.  Despite emphasizing the importance of freedom to contract, *see id.* at 334–35, the *Sparks* court found that the policy was not a "true claims made policy," was "unrealistically narrow," and "would . . . cause the kind of broad injury to the public at large . . . that precludes the enforcement of contracts that violate public policy." *Id.* at 340–41.

      New Jersey contract law is different than Washington State contract law, and it is not clear that Washington courts would come to the same conclusion. *See id.* at 339 (using the "reasonable expectations" doctrine); *compare Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378 (1996) (rejecting the "reasonable expectations" doctrine).  But with such a restrictive requirement and so little analogous case law, the Washington State Supreme Court should decide whether the combined claims-made and occurrences requirement complies with Washington State public policy.

      Defendants' Motion for Certification to the Washington State Supreme Court should be granted as to the following question: Whether a liability insurance policy providing only coverage for "occurrences" and resulting "claims made and reported" that take place within the same one-year policy period, and providing no prospective or retroactive coverage, violates Washington public policy and renders either the "occurrence" or claims-made and reported" requirement unenforceable.

      Preferred's motion for summary judgment should be denied without prejudice as to this certified issue.

### D. THE "ACTION OVER" EXCLUSION

Defendants concede that the plain language of the "Action Over" exclusion would, in isolation, exclude coverage for the underlying claim. Dkts. 49 and 52. Preferred moves for summary judgment arguing that the Action Over does just that. Two issues must be resolved. First, whether the separate "notwithstanding" provision supersedes the scope of the Action Over and provides coverage. Dkt. 49 at 12. Second, whether questions about the Action Over exclusion should be certified to the Washington Supreme Court. *Id.* at 22–24.

1. "Notwithstanding" Analysis

The Policy begins by stating the Coverage Afforded is as follows:

> Notwithstanding any other provisions contained in this Policy, the coverages set forth are limited to: (A) A claim asserted by a third party (i.e. a party who is neither an insured, nor related by ownership or management to the Member) where such claim directly substantially relates to an insured's project; and (B) A claim for a **Covered Loss** which is timely and properly reported in accordance with the terms of this **Policy**.

Dkt. 24-5 at 6.

In short, the Policy covers a claim asserted by a third party where such claim <u>directly substantially relates to an insured's project</u> and was timely and properly reported. In the underlying lawsuit, Ms. Cox alleges that an employee of Baker "was . . . performing part of [the] remodel by taking a railing apart. [His] manner and method of taking apart the railing caused a 2x4 to come loose and strike [Mr. Cox] in the side of the head at approximately 10 or 11 a.m." Dkt. 42-4 at 3. That statement suggests that the Baker employee was performing his work on Baker's project when the occurrence happened. Accordingly, Ms. Cox appears to have alleged that she, a third party, asserts a claim against Baker, the insured, that directly and substantially relates to the insured's project. Therefore, her claim is covered based on this provision.

ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

The Policy subsequently lists its exclusions, including the "Action Over" exclusion, which broadly excludes coverage for:

> [a]ny "claim" or "suit" arising out of or related to any "bodily injury" or "property damage" sustained by any general contractor(s), subcontractor(s), independent contractor(s), their employees, volunteer workers, temporary workers, day laborers, leased workers, or any persons or companies affiliated with such persons or entities, who provide work or products on job sites where the insured provides work, products or services as a contractor or sub-contractor.

Dkt. 24-5 at 8.

The "notwithstanding" provision mandates coverage despite this exclusion. The plain and ordinary definition of "notwithstanding" is "without prevention or obstruction from or by" or "in spite of." *State v. Gresham*, 173 Wn.2d 405, 427 (2012) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1545 (2002)). Therefore, the Action Over exclusion cannot <u>prevent</u> or <u>obstruct</u> that coverage. Instead, the effect of the Action Over exclusion is to emphasize that Policy coverage is limited to claims arising out the insured's work on a jobsite – it does not cover claims by third parties arising out work done by other parties on the jobsite. This is the most logical reading of the Policy as a whole from its plain terms, but it also comports with the common definition of an action over exclusion. *See* Scott C. Turner, Insurance Coverage of Construction Disputes §13.5, *Third party over actions for indemnity and contribution/Action Over Exclusion* (2d ed. Nov. 2020) (an action over excludes coverage, indemnification, and/or contribution when "an insured's employee (who is also probably receiving workers' compensation coverage benefits) sues a third party for negligence . . . and the third party sues the insured for contractual indemnification or contribution, or both"). Preferred's motion for summary judgment on this issue should be denied.

Defendants move to certify two questions to the Washington Supreme Court: whether the "Notwithstanding" provision must be read to supply coverage and whether, if not, the "Action

Over" exclusion violates public policy. Defendants' motion should be denied as to both questions. Interpretation of the Notwithstanding provision does not depend on open questions of state law, and because the Court finds that the Action Over provision does not exclude coverage, it does not present significant public policy implications.

E. **CONCLUSION**

Preferred must provide coverage unless the Policy clearly excludes it. The Court finds that the Policy unambiguously provides coverage for the claim alleged in the underlying lawsuit despite the "Action Over" exclusion. Whether the Policy as a whole provides coverage remains uncertain and depends on the resolution of the certified question. Preferred's motion for summary judgment should be denied, and Defendants' motion for certification should be granted in part.

III. **ORDER**

Therefore, it is hereby **ORDERED** that:

- Defendants Motion for Certification to the Washington Supreme Court (Dkt. 41) **IS GRANTED, IN PART**, as to the following question:
    - Whether a liability insurance policy providing only coverage for "occurrences" and resulting "claims made and reported" that take place within the same one-year policy period, and providing no prospective or retroactive coverage, violates Washington public policy and renders either the "occurrence" or claims-made and reported" requirement unenforceable;
- Preferred's Motion for Summary Judgment **IS DENIED**, without prejudice only as to the issue presented in the certified question.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of July, 2021.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER GRANTING IN PART DEFENDANTS MOTION FOR CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13